1
2
3
4
5
6
7
8
9
10                    UNITED STATES DISTRICT COURT

11                   EASTERN DISTRICT OF CALIFORNIA

12
                              ----oo0oo----
13
AXIOM ADVISERS AND
14 CONSULTANTS, INC. AND
DEAN GETZ,
15
          Plaintiffs,
16                                      NO. CIV. 2:05-CV-02395-FCD-PAN
       v.
17
SCHOOL INNOVATIONS AND
18 ADVOCACY, INC. AND
KEVIN GORDON,
19
          Defendants.
20
_____/
21

22                            ----oo0oo----

23

24     This matter comes before the court on defendants School

25 Innovations and Advocacy, Inc. ("SIA") and Kevin Gordon's

26 ("Gordon") (collectively, "defendants") motion to dismiss

27 plaintiff Axiom Advisors and Consultants, Inc. ("Axiom") and Dean

28 Getz's ("Getz") (collectively, "plaintiffs") complaint on the

                                   1

grounds that (1) the court should decline to exercise
jurisdiction, pursuant to the "primary jurisdiction doctrine,"
over plaintiffs' federal claim for attempted monopolization
and/or (2) said claim should be dismissed for failure to state a
claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  In
either case, defendants request the court dismiss the entire
action by declining to exercise supplemental jurisdiction over
plaintiffs' other state law claims.  For the reasons set forth
below, defendants' motion is DENIED in part and GRANTED in part.[2]

## BACKGROUND

Axiom is a California corporation whose shareholder and
president is Getz.  (Pls.' Compl., filed November 23, 2005, at ¶¶
1-2).  Gordon is the president of SIA, a California corporation,
with offices in California and Texas.  (Id. at ¶¶ 3-4, 12).  Both
Axiom and SIA are in the business of providing services to
California school districts relating to the reimbursement of
expenses mandated by the State of California and to the
preparation and distribution of school accountability report
cards ("SARCs").  (Id. at ¶¶ 8-10).  SIA and Axiom share mutual
clients, where one may provide SARC preparation services while
the other may provide reimbursement services.  (Id. at ¶ 22).

Plaintiffs allege that two markets are implicated in this
matter.  (Id. at ¶¶ 18-19).  The first relevant market is
comprised of California school districts that hire contractors to

---

[1]   All further references to a "Rule" are to the Federal
Rules of Civil Procedure.

[2]   Because oral argument will not be of material
assistance, the court orders this matter submitted on the briefs.
E.D. Cal. Local Rule 78-230(h).

2

obtain reimbursement of state-mandated expenses (the "First Market"). (Id. at ¶ 18).  The second relevant market is comprised of California school districts that hire contractors to prepare SARCs (the "Second Market"). (Id. at ¶ 19).  Plaintiffs maintain that SIA provides services to nearly 70% of California school districts.  (Id. at ¶ 17).

In so servicing its clients, plaintiffs assert SIA engaged in predatory and anticompetitive conduct with the specific intent to monopolize the relevant markets.  (Id. at ¶¶ 20-21). Specifically, plaintiffs allege that, in an effort to establish an unlawful monopoly, SIA wrongfully disrupted Axiom's contracts by advising SIA's clients to seek only partial reimbursement for the costs associated with Axiom's preparation of SARCs.  (Id. at ¶¶ 23-24).  Prior to a recent change in the law, expenses related to the preparation of SARCs were reimbursable as a state-mandated expense.  (Ex. A to Defs.' Req. For Judicial Notice, filed January 13, 2006 ["RJN"], and Ex. A to Defs.' Supplemental Req. For Judicial Notice, filed February 16, 2006 ["Second RJN"]). Plaintiffs allege that SIA uses its power in the First Market to acquire and maintain a monopoly in the Second Market.  (Pls.' Compl. at ¶ 25).

In addition, plaintiffs assert that SIA engaged in acts to prevent Axiom from competing in the First Market.  (Id. at ¶ 26). In particular, plaintiffs maintain that SIA refused to return cost data for the current fiscal year collected during SIA's preparation of a school district's reimbursements for the prior fiscal year, without a written agreement, where such school district had replaced SIA with Axiom to provide reimbursement

3

services.  (<u>Id.</u> at ¶¶ 26-27).  Although plaintiffs believe that
such cost data belongs to and is the confidential information of
the school district, plaintiffs assert that SIA required the
school district and Axiom to sign an agreement acknowledging that
the cost data was SIA's confidential information and agreeing to
substantial restrictions of the use of the cost data.  (<u>Id.</u> at ¶¶
27-28).  Plaintiffs allege that SIA engaged in such conduct to
disrupt Axiom's contracts and with the specific intent to
establish an unlawful monopoly.  (<u>Id.</u> at ¶ 28).  Additionally,
plaintiffs allege that SIA attempted to purchase Centration,
Inc., one of its competitors, to increase its share in the First
Market.  (<u>Id.</u> at ¶ 30).

Plaintiffs assert that SIA's conduct, which Gordon
authorized, creates a dangerous probability that it will achieve
monopoly power in the two relevant markets.  (<u>Id.</u> at ¶¶ 31-32).
Moreover, plaintiffs allege that SIA's anticompetitive conduct
has injured competition and consumers by harming the competitive
process and limiting consumer choice.  (<u>Id.</u> at ¶ 33).  As a
result of SIA's conduct, plaintiffs maintain that Axiom has
suffered an antitrust injury through the disruption of its
relationships with school districts, lost profits, and a loss of
goodwill.  (<u>Id.</u> at ¶ 34).  Finally, plaintiffs assert that SIA
will continue its acts of attempted monopolization unless
restrained by this court.  (<u>Id.</u> at ¶ 35).

Plaintiffs' complaint includes claims for: (1) attempted
monopolization in violation of the Sherman Act, 15 U.S.C. § 2,
(2) libel, (3) trade libel, (4) tortious interference with
contractual relations, (5)intentional interference with

1  prospective economic relations, (6) declaratory relief, (7)

2  unfair competition, and (8) false advertising.

3      Defendants now move to dismiss plaintiffs' sole federal

4  claim of attempted monopolization.  They argue that upon

5  dismissal of that claim, the court should decline to exercise

6  supplemental jurisdiction over the remaining state law claims.

7                              **STANDARD**

8      On a motion to dismiss, the allegations of the complaint

9  must be accepted as true.  <u>Cruz v. Beto</u>, 405 U.S. 319, 322

10  (1972).  The court is bound to give plaintiff the benefit of

11  every reasonable inference to be drawn from the "well-pleaded"

12  allegations of the complaint.  <u>Retail Clerks Int'l Ass'n v.</u>

13  <u>Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff

14  need not necessarily plead a particular fact if that fact is a

15  reasonable inference from facts properly alleged.  <u>See id.</u>

16      A complaint need not plead all elements of a prima facie

17  case in order to survive a motion to dismiss.  <u>Swierkewicz v.</u>

18  <u>Sorema N.A.</u>, 534 U.S. 506, 510-512 (2002) (rejecting a heightened

19  pleading standard for employment discrimination and civil rights

20  cases).  Fair notice of the grounds for relief along with a short

21  and plain statement of the claim are all that is required.  <u>Id.</u>

22  at 508 (citing Fed. R. Civ. Proc. 8(a)(2)).

23      Given that the complaint is construed favorably to the

24  pleader, the court may not dismiss the complaint for failure to

25  state a claim unless it appears beyond a doubt that the plaintiff

26  can prove no set of facts in support of the claim which would

27  entitle him or her to relief.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45

28  (1957); <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir.

1986).  Nevertheless, it is inappropriate to assume that plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations."  United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.[3] See Mir v. Little Co. Of Mary Hospital, 844 F.2d 646, 649 (9th Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

**ANALYSIS**

**I.    Primary Jurisdiction Doctrine**

Preliminarily, defendants argue the court should decline to exercise jurisdiction over plaintiffs' attempted monopolization claim pursuant to the "primary jurisdiction doctrine."  Under that doctrine, a court may suspend review of a claim if the resolution of that claim involves issues that have been placed within the jurisdiction of an administrative body.  U.S. v. W. Pac. R.R. Co., 352 U.S. 59, 64 (1956).  The primary jurisdiction

---

[3]    The court takes judicial notice of Exhibits A and B to defendants' Request for Judicial Notice filed on January 13, 2006, and Exhibits A and B to defendants' Supplemental Request for Judicial Notice filed on February 16, 2006.  The court declines to consider the additional extrinsic evidence provided by defendants as it is unnecessary for purposes of this motion.

doctrine seeks to "promot[e] proper relationships between the courts and administrative agencies charged with particular regulatory duties." Id. Moreover, the primary jurisdiction doctrine assures the maintenance of "[u]niformity and consistency in the regulation of a business entrusted to a particular agency." Far East Conference v. U.S., 342 U.S. 570, 574-75 (1952).

Contrary to defendants' contention, the primary jurisdiction doctrine is a discretionary doctrine. Thereunder, a court *may stay* further proceedings so as to give the parties a reasonable opportunity to seek an administrative ruling. Reiter v. Cooper, 507 U.S. 258, 268 (1993). It is within the sound discretion of the court to determine "when protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." Syntek Semiconductor Co., Ltd. v. Microchip Tech., Inc., 307 F.3d 775, 781 (9th Cir. 2002) (quoting U.S. v. General Dynamics Corp., 828 F.2d 1356, 1362 (9th Cir. 1987)). In determining if an agency has "primary jurisdiction," the court may consider if the need to resolve an issue, which has been placed within the jurisdiction of an administrative body, requires expertise or uniformity in administration. Id. Referral of the issue to an administrative agency does not deprive the court of jurisdiction. Reiter, 507 U.S. at 268.

In California, reimbursement of state-mandated costs is governed by an extensive constitutional, statutory and regulatory scheme. Cal. Const. § 6, Art. XIII B; Cal. Gov't Code §§ 17500, *et seq*. The California legislature created the Commission on State Mandates (the "Commission") to adjudicate disputes over the

existence of a state-mandated program and to adopt procedures for submission and adjudication of reimbursement claims.  Cal. Gov't Code §§ 17525, 17551, 17553, 17557 (West 2006).

In its decision adopted on April 23, 1998, the Commission announced that costs to compile, analyze, and report specific information in a SARC were reimbursable state-mandated activities under Cal. Const. § 6, Art. XIII B and Cal. Gov't Code § 17514. (Ex. A to Defs.' RJN).  The Commission's decision clearly outlined the specific information for which a school district could seek reimbursement.  (Id.)  Pursuant to the Commission's decision, school districts could seek reimbursement for SARC preparation, which included the following: salaries paid to school teachers, school site principals, and school district superintendents; statewide salary averages; the total number of instructional minutes offered in the school year; the total number of minimum days in the school year; results by grade levels from the assessment tool used by the school district; the average verbal and math SAT scores; and the drop-out rate for the most recent three-year period.  (Id.)  This is a sample of the exhaustive list of information which the Commission set forth as reimbursable.  (Id.)  However, on February 1, 2006, the Commission announced its decision that school districts could no longer seek reimbursement for SARC-related expenses, which applied retroactively to January 1, 2005.  (Ex. A. to Defs.' Second RJN).

Plaintiffs allege that SIA's anticompetitive conduct included, among other things, advising its clients that only a portion of Axiom's SARC preparation expenses were reimbursable as

8

1 a state-mandated cost.  Defendants argue that the court should
2 decline to adjudicate plaintiffs' attempted monopolization claim
3 because it requires the determination of what portion of Axiom's
4 charges were reimbursable.  That determination, defendants
5 contend, is wholly within the purview of the Commission.

6      Initially, the court notes that this issue is only one
7 aspect of plaintiffs' attempted monopolization claim.  Plaintiffs
8 allege other anticompetitive conduct, including SIA's attempt to
9 create and maintain a monopoly in the relevant markets by
10 disrupting Axiom's contracts, refusing to turn over data
11 belonging to the school districts, and attempting to purchase a
12 competitor.  (Pls.' Compl. at ¶¶ 25-28, 30).  Thus, even if
13 defendants are correct, their argument would only apply to one
14 aspect of plaintiffs' claim.  As to the other bases for
15 plaintiffs' claim, the primary jurisdiction doctrine is
16 inapplicable.

17      However, with respect to the issue of reimbursement of
18 state-mandated expenses, this case is *not* about *school districts*
19 seeking reimbursement or Axiom seeking collection of monies for
20 its school district clients.  This case does not involve any of
21 the school district clients of Axiom or SIA.  Rather, this case
22 involves two competitors in the market and one competitor's
23 allegedly anticompetitive conduct in the market.  Therefore, the
24 adjudication of this antitrust dispute is well within the
25 jurisdiction of the federal courts.  Section 2 of the Sherman
26 Act, 15 U.S.C. § 2.

27      Indeed, Axiom cannot seek a remedy for SIA's alleged
28 antitrust violations through the administrative process.  The

1  statutory scheme to which defendants ask the court to defer

2  provides the sole and exclusive procedure by which a *local agency*

3  *or school district* may claim reimbursement for costs mandated by

4  the state.  Kinlaw v. State of California, 54 Cal. 3d 326, 333

5  (1991); Cal Gov't Code § 17552 (West 2006) (emphasis added).

6  Thus, Axiom cannot seek resolution of its antitrust claim against

7  SIA from the Commission.

8          The court acknowledges that the determination of whether

9  SIA's alleged conduct was anticompetitive may require a predicate

10  finding as to which SARC-related preparation costs were

11  reimbursable.  However, in its April 23, 1998 decision, the

12  Commission clearly outlined the specific items properly included

13  in a SARC for which a school district could seek reimbursement.

14  (Ex. A. to Defs.' RJN).  Because of the clarity of the

15  Commission's decision, the court finds it unlikely that the issue

16  of which SARC-related preparation costs were reimbursable will

17  require an extensive or complicated factual inquiry as to require

18  the expertise of the Commission.  Therefore, the court finds it

19  unnecessary to refer the issue to the Commission and declines to

20  invoke the primary jurisdiction doctrine.  Accordingly,

21  defendants' motion to dismiss plaintiffs' attempted

22  monopolization claim pursuant to the primary jurisdiction

23  doctrine is DENIED.

24  **II.   Attempted Monopolization Under the Sherman Act § 2**

25          Defendants contend that plaintiffs' complaint fails to

26  allege facts to state an antitrust claim and such claim should,

27  therefore, be dismissed.  To establish a violation of Section 2

28  of the Sherman Act, 15 U.S.C. § 2, for attempted monopolization,

1   Axiom must demonstrate (1) SIA's specific intent to control

2   prices or destroy competition; (2) SIA's predatory or

3   anticompetitive conduct directed at accomplishing that purpose;

4   (3) a dangerous probability of SIA achieving monopoly power; and

5   (4) a causal antitrust injury.  Rebel Oil v. Atlantic Richfield

6   Co., 51 F.3d 1421, 1432-1433 (9th Cir. 1995).

7        Specifically, defendants argue that plaintiffs fail to

8   allege facts to support the elements of anticompetitive conduct,

9   a dangerous probability of achieving monopoly power, and a causal

10  antitrust injury.  The court addresses these elements in turn.

11       **A.    Predatory or Anticompetitive Conduct**

12       Defendants contend that plaintiffs cannot establish that

13  SIA's advice regarding reimbursement of SARC-related expenses was

14  anticompetitive because of a recent change in the law, which no

15  longer permits reimbursement for SARC-related expenses.   In

16  addition, defendants argue that plaintiffs' allegations related

17  to SIA's alleged refusal to transfer cost data to Axiom and SIA's

18  attempted acquisition of Centration, Inc. fail to demonstrate

19  anticompetitive conduct.

20       "The purpose of the [Sherman Act] is not to protect business

21  from the working of the market; it is to protect the public from

22  the failure of the market." Spectrum Sports, Inc. v. McQuillan,

23  506 U.S. 447, 458 (1993).  The Act is directed at conduct which

24  unfairly tends to destroy competition itself.  Id.  Out of

25  concern for the public interest, the Sherman Act makes the

26  conduct of a single firm unlawful when it actually monopolizes or

27  dangerously threatens to do so.  Id. at 458-459.

28       Here, plaintiffs have alleged facts sufficient to support

SIA's conduct was anticompetitive with harmful effects not only on Axiom's business, but also on competition and consumers. (Pls.' Compl. at ¶¶ 33-34).  First, plaintiffs allege that, in an effort to establish an unlawful monopoly, SIA wrongfully disrupted Axiom's contracts by advising SIA's clients to seek only partial reimbursement for the costs associated with Axiom's preparation of SARCs.  (Id. at ¶¶ 23-24).  Prior to a recent change in the law, expenses related to the preparation of SARCs were reimbursable as a state-mandated expense.  Contrary to the defendants' argument, the recent change in the law does not render plaintiffs' SARC-related allegations moot.  Plaintiffs' complaint does not place a temporal limit on the allegations of SIA's allegedly anticompetitive SARC-related reimbursement conduct.  Therefore, any of SIA's SARC-related conduct occurring prior to January 1, 2005, is still ripe for adjudication pursuant to plaintiffs' antitrust claim.

Furthermore, plaintiffs contend that SIA, in an effort to prevent Axiom from competing in the First Market, refused to turn over cost data belonging to clients who chose to replace SIA with Axiom for reimbursement services.  (Id. at ¶¶ 26-27).  Axiom complains that SIA allegedly engaged in such conduct with the specific intent to establish an unlawful monopoly and to disrupt Axiom's contracts.  (Id. at ¶ 28).  In addition, plaintiffs allege that, in an attempt to increase its share in the First Market, SIA attempted to purchase one its competitors, Centration, Inc.  (Id. at ¶ 28).

Taking the allegations as true, plaintiffs' allegations of injury to its business, competition, and consumers as a result of

1   SIA's allegedly anticompetitive conduct are sufficient to show

2   that SIA's conduct may unfairly tend to destroy competition.

3   <u>Spectrum Sports</u>, 506 U.S. at 458.  Therefore, the court concludes

4   that plaintiffs sufficiently set forth facts to establish that

5   SIA engaged in anticompetitive conduct.

6       **B.   Dangerous Probability of Obtaining Monopoly Power**

7      Monopoly power is the power to control prices or exclude

8   competition.  <u>United States v. E.I. DuPont de Nemours & Co.</u>, 351

9   U.S. 377, 391 (1956).  Whether there is a dangerous probability

10  of achieving monopoly power requires an inquiry into the relevant

11  product and geographic market, and the defendants' economic power

12  in that market.  <u>See</u> <u>Spectrum Sports</u>, 506 U.S. at 456.  In order

13  to demonstrate market power circumstantially, a plaintiff must:

14        (1) define the relevant market; (2) show that the
         defendant owns a dominant share of that market; and (3)

15       show that there are significant barriers to entry and
        show that existing competitors lack the capacity to

16       increase their output in the short run.

17  <u>Rebel Oil</u>, 51 F.3d at 1434.

18          **1.   Pleading a Relevant Market**

19     A market definition is essential to establish a

20  monopolization claim.  <u>Big Bear Lodging Ass'n v. Snow Summit,</u>

21  <u>Inc.</u>, 182 F.3d 1096, 1105 (9th Cir. 1999).  Unless alleging a *per*

22  *se* violation, plaintiffs must identify the relevant geographic

23  and product markets in which plaintiffs and defendants compete.

24  <u>Id.</u> at 1104.

25     Plaintiffs' complaint identifies two relevant markets.

26  (Pls.' Compl. at ¶¶ 18-19).  The First Market identified by

27  plaintiffs includes California school districts that hire

28  contractors to obtain reimbursement of state-mandated expenses.

1 (Id. at ¶ 18).  Plaintiffs identified the Second Market as

2 California school districts that hire contractors to prepare

3 SARCs.  (Id. at ¶ 19).  These allegations clearly set forth the

4 relevant geographic market, California, and product markets,

5 school districts who hire contractors to obtain reimbursement and

6 prepare SARCs.  Therefore, plaintiffs satisfied this prong of its

7 attempted monopolization claim.

**2.  Pleading a Dominant Share of the Market**

9      Defendants argue that plaintiffs failed to allege SIA's

10 market share in each of the two relevant markets.  Defendants are

11 correct that plaintiffs did not specifically address SIA's market

12 share with respect to either of the relevant markets.  However,

13 plaintiffs did allege, generally, that SIA services 70% of the

14 school districts in California.  (Pls.' Compl. at ¶ 17).

15     It is not necessary that plaintiffs plead "market share" in

16 its complaint in order to have adequately pled that defendants

17 have a dangerous probability of successfully monopolizing the

18 relevant market.  Rolite, Inc. v. Wheelabrator Environmental

19 Systems, Inc., 958 F. Supp. 992, 1000 (E.D.Pa. 1997).  Although

20 "market share" may be the most significant factor in determining

21 monopoly power, it is not exclusive.  Id.  Indeed, the Ninth

22 Circuit has cautioned courts to "be wary of the numbers game of

23 market percentage when considering attempt-to-monopolize claims."

24 Rebel Oil, 51 F.3d at 1438 (citing Dimmitt Agri Indus., Inc. v.

25 CPC Int'l, Inc., 679 F.2d 516, 533 (5th Cir. 1982)).  Instead,

26 the Ninth Circuit has instructed courts to analyze "market share,

27 entry barriers, and the capacity of existing competitors to

28 expand output" when considering market power for attempted

1 monopolization claims.  <u>Id.</u>

2     It is possible for the court to infer that SIA holds a

3 significant share of the relevant markets in light of the liberal

4 notice pleading standards and because the minimum showing of

5 market share required in an attempt case is a lower quantum of

6 proof than that required in an actual monopolization case.  <u>Id.</u>

7 However, as discussed below, Axiom failed to allege the other

8 factors that must be considered in determining SIA's monopoly

9 power.  Therefore, based on Axiom's bald allegation that SIA

10 provides services to 70% of the school districts in California,

11 the court cannot find that Axiom adequately alleged SIA has a

12 dangerous probability of achieving market power.

13             **3.   Pleading Significant Barriers**

14     The third pleading requirement is the demonstration of

15 significant barriers to entry and incapacity to increase output

16 in the short run.  <u>Rebel Oil</u>, 51 F.3d at 1434.  The Ninth Circuit

17 has incorporated significant barriers into the analysis of a

18 sufficiently pled dominant share of the market.  <u>Rebel Oil</u>, 51

19 F.3d at 1438; <u>see</u> <u>Am. Prof'l Testing Serv. v. Harcourt Brace</u>

20 <u>Jovanovic Legal & Prof'l Publs.</u>, 108 F.3d 1147, 1154 (9th Cir.

21 1997).  The <u>Rebel Oil</u> court defined entry barriers as "additional

22 long-run costs that were not incurred by incumbent firms but must

23 be incurred by new entrants," or "factors in the market that

24 deter entry while permitting incumbent firms to earn monopoly

25 returns."  <u>Id.</u> at 1439.

26     Plaintiffs failed to plead any facts to demonstrate that

27 significant barriers to entry or an incapacity to increase output

28 in the short run exist in the relevant markets.  Therefore,

15

1  plaintiffs have failed to set forth sufficient facts to establish
2  that SIA has a dangerous probability of achieving monopoly power.
3  Accordingly, defendants' motion to dismiss plaintiffs' attempted
4  monopolization claim is GRANTED.

5      However, because Rule 15(a) of the Federal Rules of Civil
6  Procedure provides that leave to amend shall be freely given when
7  justice so requires, the court will allow plaintiffs to amend
8  their complaint to allege facts sufficient to establish that SIA
9  has a dangerous probability of achieving monopoly power.

10     **C.   Causal Antitrust Injury**

11         In passing, defendants appear to also suggest plaintiffs
12 have failed to allege a causal antitrust injury.  Plaintiffs need
13 only plead antitrust injury, which requires plaintiffs to allege
14 sufficient facts from which the court can discern the elements of
15 an injury resulting from an act forbidden by the antitrust laws.
16 Newman v. Universal Pictures, 813 F.2d 1519, 1522 (9th Cir.
17 1987).  Plaintiffs allege that Axiom has suffered (1) antitrust
18 injury; (2) the disruption of its relationships with its school
19 district clients; and(3) lost profits and goodwill.  (Pls.'
20 Compl. at ¶ 34). Moreover, plaintiffs also allege that SIA's
21 conduct has injured competition and consumers and that its acts
22 have an anticompetitive effect of harming the competitive
23 process, limiting consumer choice, and harming consumers.  (Pls.'
24 Compl. at ¶ 33).  These allegations are sufficient to plead
25 causal antitrust injury.
26 /////
27 /////
28 /////

16

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss plaintiffs' attempted monopolization claim is DENIED in part and GRANTED in part. Because the court grants plaintiffs leave to amend, defendants' request that the court dismiss the entire action by declining to exercise supplemental jurisdiction over the remaining state law claims is DENIED.

Plaintiffs are granted fifteen (15) days from the date of this order to file a first amended complaint in accordance with this order. Defendants are granted thirty (30) days from the date of service of plaintiffs' first amended complaint to file a response thereto.

IT IS SO ORDERED.

DATED: March 20, 2006.

_____     /s/ Frank C. Damrell Jr.
                                     FRANK C. DAMRELL, JR.
                                     United States District Judge

17